avoid the payment of taxes justly due the national, state and municipal governments, by the use of means which would be considered dishonest between man and man, may have had much to do with the commission of this crime by you. For these reasons, and particularly on account of the recommendation of the jury, I shall make your punishment lighter than I otherwise would. I sentence you to pay a fine of $1,000, and to be imprisoned in the county jail of Multnomah county for the term of one day; and it is also ordered and adjudged that the United States have judgment for such fine, and costs taxed at $500, and that you stand committed to the jail aforesaid one day for every $2 of such fine and costs, or until the same are paid.".

---

## Case No. 16,341a.

### UNITED STATES v. SMITH.

### SAME v. OGDEN.

[3 Wheeler, Cr. Cas. 100.]

Circuit Court, D. New York. April, 1806.

#### INDICTMENT—PLEA IN ABATEMENT.

[It cannot be pleaded in abatement to an indictment that it was founded on illegal testimony introduced before the grand jury.]

At law.

[Pleas in abatement to indictments of defendants, under Act June 5, 1794, § 5 (1 Stat. 384), for misdemeanors in beginning, setting on foot, and providing the means for, a military expedition against dominions of a foreign power, with which the United States were at peace. Preliminary to the finding of the indictment, Ogden's sureties surrendered him in court, and were discharged from their recognizance, and defendant was committed to the custody of the marshal of the district. Defendant's counsel prayed the allowance of a habeas corpus, which was granted instanter, and moved that defendant be discharged from the custody of the marshal, which motion being denied after full argument, it was ordered that defendant stand committed, and recognizance was entered into for his appearance in the sum of $10,000. A motion by defendants' counsel that certain examinations and depositions of Ogden and Smith, taken before Judge Tallmadge, be suppressed, and not permitted to go to the grand jury or otherwise used, on the ground of their having been improperly and illegally taken, was denied. Thereafter, and on April 7, 1806, the grand jury presented separate indictments against Ogden and Smith, in several counts, which charged them on January 10, 1806, with beginning, setting on foot, and providing the means for, a military expedition against the territory of the king of Spain, with whom the United States were then at peace. Defendant Smith being called on to appear and answer, his counsel produced a certificate from the sheriff of the county, stating that he was in his actual custody at the suit of John Donaldson on a ca. sa. for a certain sum, and at the suit of John Livingston on a cap. ad resp. for a certain other sum, and was released on a prison's bound bond. The sureties on his recognizance being discharged, the district attorney moved that a bench warrant be issued to the marshal to bring in the body of defendant instanter. The marshal returned to such warrant the certificate of the sheriff of the county, that defendant was a prisoner in his actual custody by virtue of a cap. ad sat., issued out of the state supreme court, and he certified to the same fact himself. Such return was not considered sufficient, and the marshal was ordered to bring in the body of defendant, as directed. The allowance of a habeas corpus ad testificandum was prayed by the district attorney, and defendant Smith was brought into court by the sheriff upon such writ, and the marshal made return that defendant was in his actual custody, being taken into court. Thereupon the district attorney moved that defendant Smith be arraigned on his indictment. This motion was opposed by defendant's counsel, on the ground that, being brought into court upon such habeas corpus to testify in behalf of the United States on the indictment against Ogden, and said Ogden not having pleaded to said indictment, such habeas corpus was an abuse of the process of the court, and that the arrest of the defendant by the marshal in the circumstances was illegal, and that defendant ought to be discharged therefrom. The court held that said Smith could not be arraigned on his indictment until he was disposed of as a witness, for which he was brought into court. The district attorney thereupon stated that he did not want said Smith's testimony at such time, and prayed that he be ordered to plead to his indictment. Defendant, being ordered to plead to such indictment, filed a plea in abatement, verified by affidavit. Defendant Ogden also filed a similar plea in abatement, such pleas being substantially as follows:]

That the grand jury by whom the bill of indictment was found, previously to the finding thereof, had before them illegal testimony, and such as, by the laws of the land, ought not to have been before the said grand jury previously to their finding the said bill of indictment; and that the said defendant, on the first day of March last past, was arrested by virtue of a warrant issued by the Honorable Matthias B. Tallmadge, Esq., district judge of the United States for the district of New York, and thereupon carried before the said judge, and was then and there sworn and examined by the said judge touching the supposed offences charged in the said indictment, and was then and there illegally, and against his will, forced and compelled by the said judge to answer cer-

tain questions touching the said supposed offences, in the said indictment contained, which said examination and deposition of the said defendant were reduced to writing by the said judge, and the said defendant was then and there by the said judge illegally, and against the will of him, the said defendant, compelled to sign the same, and to swear to the same as the same were so reduced to writing and signed, and that the deposition in writing of one (the defendant in the other cause) taken before the said Honorable Matthias B. Tallmadge, Esq., in the absence of the said defendant, together with the aforementioned illegal deposition and examination of him the said defendant, were, before the said indictment was found, illegally laid before, and were before the grand jury, who found the said bill of indictment, and this he is ready to verify, &c.

After these pleas had been filed, the district attorney prayed time until the next day to consider what measures he should adopt, which was immediately granted by the court, without any opposition on the part of the defendants. On the next day, the district attorney filed his demurrers to those pleas; and the counsel for the defendants prayed time to join in demurrer till the next day, in order that they might be prepared for the argument.

The discussion relative to postponement of the argument on the demurrer was then renewed. Mr. Emmet stated, that from the nature of the facts set forth in the pleas, he had rather expected the district attorney would have taken issue on them, than admitted them by demurrer; that therefore the whole of his attention, and he believed also of that of his associate counsel, had hitherto been directed to the best manner of supporting the plea before a jury; that therefore the demurrer was a surprise upon him, and he was not prepared to argue it, except on the general principles which first suggested to the defendants' counsel the propriety of the plea. He observed further, that no objection had been made to indulging the district attorney with time for consideration yesterday, because the pleas were probably not expected by him; and there was no wish on the part of the defendants' counsel to obtain an advantage by surprise.

THE COURT then observed, that if the defendants' counsel were really unprepared, they should be indulged with time till the afternoon, but no longer; and at half past twelve adjourned till three o'clock.

The sitting of the court being resumed, the district attorney began by stating some formal objections to the plea, which it is unnecessary to mention here, as the judgment of the court was founded exclusively on the general objection on the merits, that no such plea would lie. On this general question, he argued, in support of the demurrer, that this plea was a perfectly novel experiment, for which no precedent or authority could be found. This very novelty was conclusive evidence that it would not lie; for otherwise it is inconceivable that it should not have been made use of before now. It manifestly appears, from the silence of all the elementary writers, that there can be no such plea in abatement. Lord Hale (2 Hale, P. C. c. 30, p. 236) details all those pleas, among which such as this is not to be found. They are, according to him: 1st, such defects as arise upon the indictment itself, and the insufficiency of it; 2d, such defects as are in matters of fact, as misnomer or false addition of the prisoner; and 3d, by matter of record. The acts of grand juries are not to be brought into court, and questioned in this way; they are independent and irresponsible; they judge for themselves of the testimony upon which they ought to find indictments, and no one has a right to inquire; nor has he, without a violation of the grand juror's oath, the means of knowing what evidence they may have had before them. No injury can result from this; for it is the duty of the grand jury to decide on ex parte evidence; and if they decide wrong, or prefer a false charge, the natural and the only remedy is, that the accused will be acquitted on his trial before the petty jury. The object of the grand jury is only to judge whether there is probable cause for putting a party to answer a charge, and therefore it should not be bound down to the same strictness of investigation as the tribunal which is ultimately to decide upon the charge. The counsel for the defendant have probably been led to adopt this step by Dr. Dodd's Case, 1 Leach, 155: but in truth it is an argument against them, for it is no precedent of a plea in abatement. If such a plea would have lain, why was it not adopted in that case? On the contrary, the matter there submitted to the court was laid before it on a summary application; which clearly shows that the prisoner's counsel had no idea it could be taken advantage of in any other way.

The defendant's counsel replied as follows: Among the authorities cited on the opposite side is the arrangement in 2 Hale, P. C. c. 30, p. 236, of pleas in abatement of the indictment; and from the circumstance that a plea similar to that now under discussion is not found there, it is inferred, that no such plea can exist. But it appears that Lord Hale's arrangement has not been very accurately examined. He classes those pleas as follows: 1st, or such defects as arise upon the indictment itself and the insufficiency of it; 2d, such defects as are in matters of fact, as misnomer or false addition of the prisoner; and, 3d, by matters of record. Now, we do not see why our plea does not come under the second of those heads; for it is a mistake to confine that head merely to misnomer or false addition of the prisoner. The arrangement comprehends pleas from such defects as are on the face of the indictment itself, which perhaps more properly ought to be call-

ed demurrers; 2d, such as arise from matters dehors the indictment in pais; and, 3d, from matters dehors the indictment of record—comprehending every possible matter that can arise. Is not the circumstance alleged in our plea, that illegal evidence has been offered to the grand jury, if it be true, matter of fact, and dehors the indictment? And does it not exactly class itself under the second head of Lord Hale's arrangement? If it does not, and that head must be considered as comprehending only the two cases that appear to be mentioned, merely for the purpose of illustration, then his classification is insufficient; and in proof of that assertion we specify a plea in abatement unquestionably good, which is equally excluded from his arrangement. This is to be found in Browne, Abr. tit. "Indictment," 2: "Note, that where a man is indicted of felony by those, of whom part are indicted or outlawed of felony, and others acquitted by pardon, so that they are not 'probi nec legales homines,' there it was agreed, that the indictments by them presented shall be void, and the parties who are indicted shall not be arraigned on this; and note, that this matter ought to be pleaded by him who is arraigned on this indictment, before he pleads to the felony." On this quotation let it be observed for the present, that it furnishes proof of a plea in abatement arising from matter of fact, dehors the indictment, and not from misnomer or false addition of the prisoner, but from matter relative to the grand jury; and it is therefore so far precisely parallel to that before the court. Having thus endeavored to set aside the respectable authority of Hale, if it could be considered as furnishing any argument against us, let us proceed to consider the general principles on which our plea can be supported. It is a fundamental doctrine in the law, that there is no wrong without a remedy, and no right without the means of enforcing it. Apply that to the present case. Is it not a wrong to be accused and subjected to prosecution on illegal evidence; to be injured in character, in peace of mind, and in the trouble and expense of defending one's self against an indictment which by the rules of evidence and law ought not to have been found? If so, what is the remedy? Is it not the right of every man that he shall not be put to answer to an indictment, unless it shall have been found according to the rules of law? And if so, what are the means of enforcing that right? A grand jury, it is true, ought to listen only to ex parte evidence; but that should be of such a nature as would be received to support the prosecution before a petty jury, and such as, if uncontradicted and unexplained, would induce a conviction The rules of evidence, are the result of accurate reasoning, and of a strict regard to the rights of those, whose persons or property are to be affected. That reasoning is equally accurate, and those rights ought to be equally sacred, whether the investigation be before a grand or petty jury. Those rules of evidence are not the result of any statutory regulations, but are adopted on account of their wisdom, justice, and universal applicability. What is there in the nature of grand juries, in the purposes for which they were instituted, or the objects they are to attain, that ought to enfranchise them from those rules of wisdom and of justice which are also of universal applicability?

But the attorney general insists, that grand juries are independent, and irresponsible; judging for themselves as to the grounds on which they will prefer an accusation, and that no one has a right to investigate or to know what evidence they have had before them. This doctrine is broadly denied; and we do so from regard to an institution, which we have been habituated to love, and do not wish at this day to learn to detest. Grand juries are the offspring of free government; they are a protection against ill-founded accusations, and the necessity of their originating bills of indictment is supposed to be infinitely more friendly to liberty than the mode of proceeding by information; but if their powers were of such a nature as we have heard described, we should advise the friends of freedom and security to seek for the abolition of such an odious institution, and to throw themselves at once upon the mercy of the public prosecutor. What frightful privileges is it alleged to possess? Hearing only ex parte evidence, secret in its deliberations, irresponsible for its decisions, and bound in its investigatons by no rules of law! Does this fall short of what we have heard or read respecting the most despotic tribunals in the most enslaved countries? The powers which it in fact possesses, of deciding only on the evidence for the prosecution, and of keeping its deliberations secret, are in themselves sufficiently serious; but they are controlled and prevented from becoming dangerous by this, that it is bound to investigate according to the rules of law. It is at liberty to range through the wide extent of the community in pursuit of crime; but it is confined to travel in its pursuit only by the established paths of evidence. From whence too does the attorney general infer, that grand juries are irresponsible? Is it from the power anciently claimed by judges of fining them for misconduct? We do not pretend to say that such a power ought to be revised, but the frequent exercise of it in former times shows that their acts have always from the earliest periods, been considered as subject to investigation and punishment; and at this day it will not surely be questioned, that if a grand jury grossly misconducted itself from corrupt motives, the members so offending might be prosecuted by information or indictment, as is specified in 2 Hale, P. C. 159, 160; where he also mentions the 3 Hen. VII. c. 1, empowering justices of peace, oyer and terminer, or gaol de-

livery, to impanel another inquest to inquire of the concealments of a former one, for the purpose of punishment. If they are not irresponsible, and that their acts may be inquired into, let us see whether there be any thing in the secrecy of the grand jury proceedings to prevent our being at liberty to allege that illegal evidence was offered to them. It might perhaps be advisable to ascertain with more precision than is already done in what the secrets should really consist; but without entering into any discussion of the kind, it may be sufficient to observe that although the sentiments expressed by jurors, and the facts disclosed by witnesses to them, are secrets, the names of those witnesses never can be. Those are facts which any man may learn, by placing himself at the door of the grand jury room, or by looking at the names indorsed on the bills after they are found. We may say, further, that no unlawful act done in the grand jury, is such a secret as jurors are bound by their oaths to keep. If a bill of indictment were found by less than twelve of the jury, surely no man is restrained from disclosing that. If a bill of indictment be found in another unlawful way, by the admission of illegal evidence, is that violation of law more protected by the obligation of secrecy? It would be competent to him against whom an indictment had been found by only eleven jurors, to avail himself of that fact, and to get rid of the accusation. Why is it not equally competent to the man, who is indicted on evidence which the grand jury ought not by law to have received, to insist for the same purpose on the illegality of this procedure?

We have established that grand juries are not independent of either the law or the court; let us now examine whether they are exclusively competent to judge for themselves as to the grounds on which they will prefer an accusation. To that doctrine may be opposed the well-known maxim "ad questiones legis respondeant judices, ad questiones facti, juratores." That maxim so accurately marks the distinct and constitutional provinces of judges and juries that we cannot hesitate to apply it equally to grand as to petty juries. They are each of them subordinate parts of the criminal system obviously instituted for the ascertainment of facts; and, as to matters of law, under the guidance and control of those with whom is deposited the interpretation of the law. If then it shall at any time in the course of the proceedings appear to the judges, that the grand jury are about to err, or have erred, in matter of law, in the first case the court will prevent their error, by giving them proper information; in the other case, where an error has been actually committed, the court will interfere, and prevent any injurious consequences from the mistake. Every day's experience shows us grand juries applying to the court for advice in matter of law, and the court directing them as of right, and as a part of its duty. There are two cases which immediately present themselves, and are illustrative of those two positions. In the one, the court prevented the error which the jury was about to commit; in the other, if the alleged error had been actually committed, the court manifestly would have interfered, and prevented any injurious consequences from the mistake. The first is Denby's Case, 2 Leach, 514; the other is Dr. Dodd's Case, 1 Leach, 155; and both prove that illegal evidence shall not be permitted to go before the grand jury. In Denby's Case, that body, suspecting Denby himself (who was examined as a witness before it against one Edwards) of prevaricating, applied to the court for his depositions taken before the magistrate, pursuant to the statutes of Philip and Mary. But the court refused, because while Denby could be had, they were only secondary evidence, and would be therefore illegal. The judges did not say to the jury, "You are independent and irresponsible, and you must decide for yourselves as to the grounds on which you will find indictments; therefore, as you ask for those depositions, take them, though they are not strictly legal evidence." No; their answer substantially establishes, that whatever is not legal evidence, shall not go before the grand jury, and that it is not that body, but the court, which is to decide on the legality of the evidence on which an indictment is to be found. In Dr. Dodd's Case, he stated to the court, when called upon to plead, that the indictment was found on the testimony of an incompetent witness. Did the court answer—"with that we have nothing to do; the grand jury only is competent to decide as to the evidence on which it will find indictments?" No; the judges instantly received the objection, and determined that if the grand jury had found a bill on illegal evidence, they would interfere and prevent any injurious consequences to the prisoner. The point was argued by some of the most able lawyers at the bar, and submitted to the twelve judges; and it was only because they decided that the witness was competent and the evidence legal, that the objection did not avail—from which it manifestly results, that where the evidence on which a bill of indictment has been found, is confessedly illegal, the court should interpose, and prevent the accused sustaining any injury from the error of the jury. But, says the attorney general, if a grand jury do wrong, and find an indictment on illegal evidence, the remedy and the only remedy is, that the accused will be acquitted on his trial, before the petty jury. That this is not the only remedy, is clearly established by the two cases last cited. Let us farther examine, whether it be any remedy for the wrong done to a citizen by being illegally indicted. Suppose a case of misery often witnessed; a wretch, after being indicted, unable to find bail—or a man indicted of a felony, in which bail would not be received; suppose farther, what not unfrequently happens, a

court limited like this as to the duration of its sittings, and so pressed with business, that part must be postponed—would it be any remedy to a man illegally indicted, and obliged to remain in prison until September next, that in September next he would be acquitted and discharged? Is such an acquittal a remedy for a moment's imprisonment, for anxiety of mind, derangement of affairs, suspension or loss of character? If not, we revert to the established maxim, "there is no wrong without a remedy," and ask, in this case, what is the remedy? or, at least, what is the remedy exclusive of that which we have adopted?

But great stress is laid on the novelty of this plea, and on its being entirely without precedent. Whether it be so entirely without precedent, shall be examined presently; but let us now take for granted that it is so. This certainly imposes on us some difficulty; but it only imposes one which has been gotten over in a case very nearly similar. It has been already shown from Brooke, Abr. tit. "Indictment," § 2, that where some of the grand jury were indicted or outlawed of felony, it might be pleaded in abatement of the indictment. As far as we can find, there is but one instance of such a plea, and that in the reign of Charles I. Sir William Withipole's Case, reported Cro. Car. 134. That this was the first instance of such a plea, is manifest from the reporter's expression, that "because this was the first plea that had been upon that statute, and would be a precedent in crown matters, the court would advise." Here then is a plea, the like of which had never been produced before the time of Charles I., and yet its entire disuse and novelty formed no ground for its rejection. Since the days of Charles I., there has been no precedent of any thing like it. If, then, that solitary case had not accidentally happened to occur, the same objection of novelty would as strongly apply to that plea, which is unquestionably good, as it can to that which we have offered to the court. But novelty only imposes on us the necessity of more accurately investigating the principles of law, on which we rely; if our deductions from them be well founded (and we trust they are) the objection of novelty vanishes.

Along with this objection of novelty may be classed another; namely, that supposing the court will interfere in a case like this, we have mistaken our application; and to that was pointed the attorney general's expression, that Dr. Dodd's Case is no precedent for a plea in abatement. To that we answer: 1st, that there may be more ways than one of applying to rectify the same error; and, 2d, that emphatically the most correct and proper way of applying to rectify this error, is by a plea in abatement. The first position may be illustrated thus: It is laid down in 2 Hawk. P. C. c. 25, § 16, that any one who is under a prosecution for any crime whatsoever, may, by the common law, before he is indicted, challenge any of the persons returned on the grand jury, as being outlawed for felony, &c., or villeins, or returned at the instance of a prosecutor, or not returned by the proper officer, &c. Here then is a summary mode given to the accused of objecting to grand jurors, either by challenging the array, or challenging the polls, as the case may require; but has he no other mode? Sir William Withipole's Case, Cro. Car. 134, and Brooke, in the paragraph already cited from him, tells us that these objections may be pleaded in abatement; and Lord Coke (3 Inst. 34) says, "The safest way for the party indicted, is to plead, upon his arraignment, the special matter given unto him by the statute of 11 Hen. IV. for the overthrow of the indictments, with such averments as are by law required (agreeable to the opinion of Lord Brooke, ubi supra), and to plead over to the felony, and to require counsel learned for the pleading thereof, which ought to be granted, and also to require a copy of so much of the indictment as shall be necessary for the framing of his plea, which ought also to be granted, and these laws made for indifferency of indictors, ought to be construed favorably; for that the indictment is commonly found in the absence of the party, and yet it is the foundation of all the rest of the proceedings." Here, then, is a case where an objection to the grand jury may be taken advantage of either by a challenge to the jury, or by a plea in abatement, at the option of the defendant. Farther, cases frequently occur, in which an indictment is quashed, on motion for error on the face of it, which might have been the subject of demurrer, or of arrest of judgment; but was it ever said in any of these cases, that because you have the first remedy, you cannot have the last? On the contrary, summary applications, on motion, particularly in criminal cases, are comparatively of modern invention; for the most part introduced for the ease of the defendant, and to save him from the technical nicety of formal pleading; but they were never intended to deprive him of the benefit of such pleading, should he judge fit to resort to it.

Dr. Dodd's Case, however, can be considered in no other light than as furnishing a plea in abatement, pleaded ore tenus; he averred, that the indictment was found on illegal evidence, which he set forth, and submitted that he ought not to be compelled to plead the general issue. Have not this allegation and prayer all the substantial requisites of such a plea? But the fact which he averred, being admitted, there was no necessity for putting it into form, and the law arising from them was argued as on a demurrer. Had the facts, however, been disputed, and the law indisputable, what should he have done? The answer to this question leads to the discussion of our second position—that emphatically the most correct and proper way of applying to rectify this error, is by a plea in abatement.

Had the facts been disputed, should they have been ascertained by a war of affidavits submitted to the judges, who are not the competent organs for ascertaining facts? No, "ad quæstiones facti respondeant juratores." If the facts alleged would afford sufficient ground for quashing an indictment, but their truth be controverted, a jury must decide on their truth; a jury cannot decide on their truth without an issue joined; an issue cannot be joined without a plea put in; and no plea can be put in but a plea in abatement. It follows, therefore, that wherever the facts are capable of being traversed, the only correct way of bringing them forward is in the form of a plea tendering an issue—the ancient and strict rules, of which the defendants have not lost the benefit, know of no other way of bringing before the court facts that ought to prevent an accused person answering an indictment than by pleading them; that if denied, their truth may be tried by those who are to try the truth of facts; and if admitted or proved, they may appear upon the record, and bring it to a legal termination. Any other way is an innovation—useful in many cases, frequently an advantage to the accused—but one which he may waive, if he prefer the mode of pleading.

As to the formal objections which were taken, the counsel for defendants replied to them; but stated, that the facts contained in their pleas had come to their knowledge so very short a time before the defendants were called upon to plead, that they had no time to reperuse them; and were obliged to file the original draughts, without even taking copies; that, therefore, if the court should think any of the formal objections valid, they would pray for liberty to amend; which they had no doubt it would be ready to grant, under the circumstances of these being criminal cases, in which the defendants should not be entangled by niceties, and of there being no precedent to which the counsel could have had recourse for their guidance.

Pierpont Edwards replied, but confined himself entirely to the formal objections, and did not enter into the general question whether such a plea would lie. After he had concluded, the court adjourned till the next day.

The pleas in abatement were, on the following day, over-ruled on the merits, and judgments were given against defendants upon the demurrers. Defendants' motion for permission to amend their pleas in abatement was denied. A motion was made to quash the indictment upon the evidence before the court, which being over-ruled, and defendants ordered to plead in chief, they severally pleaded not guilty. Thereupon the district attorney moved for leave to proceed to trial on the indictments.

Defendants' counsel filed the several depositions of defendants, stating: That James Madison, of the city of Washington, William Duncanson, of the same place, and Doctor Thornton, of the same place, Thomas Lewis, now master of the ship Leander, and Jonathan S. Smith, supercargo of the ship Leander, will be material witnesses for the said defendants in the trial of the said several indictments, as they are advised and believe to be true, and that they cannot safely proceed to the trial thereof, without the testimony of them the said James Madison, William M. Duncanson, and Dr. Thornton, Thomas Lewis and Jonathan S. Smith; and further stating, that the distance of the place of residence of the said James Madison, William M. Duncanson, and Dr. Thornton, is so great, that their attendance could not have been procured at this city since the said indictments were found, and that they expect to be able to procure the presence of the said James Madison, William M. Duncanson, and Dr. Thornton, or the benefit of their testimony, by the next sitting of the circuit court of the United States for the district of New York; and that they have every reason to think, and do verily believe, that the said Jonathan S. Smith and Thomas Lewis, will return to the United States by the ninth of September next, and the defendants will be able to procure their attendance, or the benefit of their testimony, at the next circuit court of the United States for the district of New York.

Upon such affidavits, defendants' counsel asked that the trial of the indictments be put off until the next stated term of the court, to be held on the first day of September next. Such motion was not opposed by the district attorney. It was ordered by THE COURT, that trial be put off until July 14th next, at which time it was ordered that a special session of the court should be held for the trial of criminal causes at the city of New York.

Nathan Sanford. Dist. Atty., and Pierpont Edwards, for the United States.

Cadwallader D. Colden, Josiah Ogden Hoffman, and Thomas Addis Emmet, for defendants.

[NOTE. At the special July term, the district attorney moved to bring on the trial of William S. Smith, and defendants' counsel moved for an attachment against absent witnesses, and for a continuance until such witnesses could be produced. Defendants' motion was denied and it was ordered that the case proceed to trial. Case No. 16,342. The trial of Smith resulted in a verdict of acquittal. Case No. 16,342a. A similar verdict was also rendered on the trial of Ogden. Case No. 16,-342b.]